UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HEAVEY,

          Plaintiff,                    Case No. 2:25-cv-13900

v.                                 Hon. Brandy R. McMillion
                                 United States District Judge


ENERIC PETROLEUM CORPORATION,

          Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE
COMPEL ARBITRATION, AND FOR COSTS AND FEES (ECF NO. 9),
AND STAYING THE ACTION**

On December 4, 2025, Plaintiff Michael Heavey ("Plaintiff" or "Heavey")

filed a Complaint asserting claims of breach of contract, violation of the Michigan's

Sales Representative Commission Act, unjust enrichment, and fraudulent

inducement against his former employer, Defendant Eneric Petroleum Corporation

("Defendant," "Eneric," or "the Company"). *See generally* ECF No. 1. Eneric

contends that the Complaint is improper in light of a valid and enforceable mediation

and arbitration agreement ("Arbitration Agreement" or "the Agreement") between

the parties and thus brings this Motion to Dismiss or in the Alternative Compel

1

Arbitration, and for Costs and Fees.[1]  *See* ECF No. 9.  The Motion has been fully briefed so the Court will rule based on the record before it.  *See* ECF Nos. 9, 12, 13; E.D. Mich. L.R. 7.1(f)(2).  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion (ECF No. 9).

**I.**

On February 24, 2025, Heavey accepted an offer of employment ("Offer Letter") with Eneric for a Regional Vice President, Business Development position. ECF No. 1, PageID.5-6.  The Offer Letter included, in part, the following,

> Although you will conduct most of your employment duties through Cambridge Investment Research, Inc. ("CIR"), you will be an employee of, will be compensated by, and will receive benefits from Eneric Petroleum Corporation, sister company of CIR and Cambridge Investment Research Advisors, Inc. ("CIRA"). CIR and CIRA align their employment policies and procedures fully with those of their parent company, Cambridge Investment Group, Inc., and all four entities are collectively referred to as "Cambridge" in this letter.

ECF No. 8-2, PageID.49-50.  After execution of the Offer, Plaintiff began his employment with the Company on February 28, 2025.  Approximately three weeks later, on March 27, 2025, Plaintiff received an arbitration agreement from his new

---

[1] Considering the relief requested in this Motion, alongside Plaintiff's request for a stay rather than dismissal if arbitration is compelled, the Court begins by addressing whether arbitration should be compelled.  Only if the Court determines that arbitration should not be compelled will it address the merits of the claims; otherwise, the Court will stay the proceedings.  *See Smith v. Spizzirri*, 601 U.S. 472, 473 (2024) (holding that "staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. Keeping the suit on the court's docket makes good sense in light of the FAA's mechanisms for courts with proper jurisdiction to assist parties in arbitration.").

employer.  ECF No. 12, PageID.196.  Upon reviewing the document, he had some concerns—particularly with its mandatory language.  *Id.*  He decided to discuss his concerns with his supervisor Matt Goodwin ("Goodwin") and a co-worker named John ("JD").  *Id.*  The Arbitration Agreement requires, in part, that

> By this letter agreement (the "Agreement"), you and Cambridge agree that any Employment Dispute, whether asserted before or after the termination of your employment, will be resolved by mediation and, as necessary, binding arbitration as detailed below. Please review this Agreement, because by signing below, you acknowledge your awareness of the Agreement's terms and further agree expressly to be bound by its terms.

ECF No. 9-3, PageID.108.  It also defines "Cambridge" as "Cambridge Investment Research, Inc. and its current or future parent organizations, subsidiaries, affiliates, successors, or assigns[.]"  *Id.*  While Heavey concedes that there is an executed version of the Agreement with his electronic signature on it, he maintains never recalling signing the Agreement—especially given his concerns with some of its language.  ECF No. 12-1, PageID.212-213.  On May 23, 2025, Defendant terminated Plaintiff's employment, citing a "disagreement" between the parties, and this action resulted.  According to Defendant, the Court should either dismiss Plaintiff's complaint or compel the parties to mediation/arbitration in accordance with their binding Arbitration Agreement.  *See* ECF No. 9.

## II.

Under Section 2 of the Federal Arbitration Act ("FAA" or the "Act"), "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable," unless there are legal or equitable grounds "for the revocation of any contract ..." 9 U.S.C. § 2. Courts must not only "enforce [arbitration agreements] according to their terms[,]" because they are "on an equal footing with other contracts[,]" but do so "rigorously[.]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (cleaned up); *see also Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 881 (6th Cir. 2021) (cleaned up).

When "the making" of an arbitration agreement is in issue, pursuant to Section 4 of the FAA, the Court will apply a summary judgment-like standard. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021) (holding that a district court must "evaluate[…] whether [a plaintiff] adequately challenged the making of the contract using the standards that apply on summary judgment."). The defendant "must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists" by applying "ordinary state-law principles." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021). Upon finding a valid arbitration agreement between the parties, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

4

arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**III.**

**A.     Whether There is a Valid and Enforceable Arbitration Agreement Between the Parties**

Heavey has put the formation of the making of the Agreement "in issue" by asserting that he "does not recall ever returning to the document or knowingly signing it after expressing [his] concerns" with it.  ECF No. 12, PageID.195.  In his declaration, he states, "I did not knowingly or intentionally agree to waive my right to pursue disputes in court."  ECF No. 12-1, PageID.213.  The parties do not dispute—nor does the Court have a reason to doubt—that Michigan law applies.  ECF No. 12, PageID.199; ECF No. 13, PageID.226.  Under Michigan law, the validity of the Arbitration Agreement is based on "[…] five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."  *AFT Mich. v. State*, 497 Mich. 197, 866 N.W.2d 782, 804 (2015).

Plaintiff argues that the contract is invalid because the fourth element is not satisfied.  ECF No. 12, PageID.199-201.  He asserts there was no mutuality of agreement, or "meeting of the minds," because, despite the electronic signature that Defendant points to, Plaintiff has no recollection of signing nor executing the document.  *Id.*  Defendant responds that in actuality, Heavey "signed the Agreement,

5

confirmed his 'awareness of the Agreement's terms,' and agreed 'to be bound by them.'" ECF No. 9, PageID.97. It goes on to cite case law where a court in this District found that the plaintiff's "blanket declaration that he did not 'check the box' to sign the agreement [wa]s insufficient to show that he did not assent to the agreement." ECF No. 13, PageID.222 (citing *Crockett v. Audi of Am., LLC*, 728 F. Supp. 3d 600, 607 (E.D. Mich. 2024)). Eneric bears the burden of showing that a contract exists between the parties. *Hergenreder v. Bickford Senior Living Grp.*, LLC, 656 F.3d 411 (6th Cir. 2011). And the Court finds that it has carried its burden.

For parties to have mutuality of agreement, "[t]here must be a meeting of the minds on all the material facts in order to form a valid agreement, and whether such a meeting of the minds occurred is judged by an objective standard, looking to the express words of the parties and their visible acts." *Groulx v. Carlson*, 176 Mich. App. 484, 49 (1989). Eneric's "mind" is clear from its expressed words, "**[y]our assent** to this Agreement is **mandatory**. As a **condition** of **your employment and/or continued employment** with Cambridge, you and Cambridge agree that, to the fullest extent permitted by law, all Employment Disputes will be resolved by mediation and, as necessary, binding arbitration." ECF No. 9-3, PageID.108 (emphasis added).

Heavey's "mind" is also clear. Even if the Court were to call into question the validity of his electronic signature based on his claimed inability to recall signing it,

his continued employment with the Company is adequate assent. *Groulx*, 176 Mich. App. at 466 ("A meeting of the minds can be found from **performance and acquiescence** in that performance.") (emphasis added).  Plaintiff does not assert that after reading the Agreement and raising his concerns with co-workers, he immediately resigned from his position with Eneric.  *See* ECF No. 1, PageID.1-11 (stating that Plaintiff began his employment on February 28, 2025; also stating that on May 23, 2025, plaintiff's employment was terminated); *see also* ECF No. 12-1, PageID.212 (declaring that on or about March 27, 2025, Plaintiff received the Agreement, read it, and discussed it with his supervisor and a co-worker). Therefore, the Court assumes that he continued his employment, and that continued employment forecloses any argument that the parties lacked a valid contract under Michigan law based on an alleged lack of mutuality of agreement.

Further, contrary to Plaintiff's contention, this Circuit has made clear that a party's testimony that they do not remember signing an arbitration agreement does not render it void.  *Boykin*, 3 F.4th at 839-840.  As Defendant points out, the extent of Heavey's basis for invalidating the Agreement is his own lack of recollection of signing it.  This is significant because Heavey does not contend that he never received notice of the Agreement.  To the contrary, he admits he did:

> **6.** On or about March 27, 2025, during my second week of training in Fairfield, Iowa, I recall receiving an email containing documentation that included an arbitration agreement.

**7.** The arbitration document included language stating that arbitration was mandatory.

**8.** When I read that language, I became concerned about what it meant and whether it required me to waive my right to pursue disputes in court.

**9.** After receiving the document, I asked Matt Goodwin to come over to my desk so that I could discuss the document with him.

ECF No. 12-1, PageID.212. Without more, his inability to recall assenting to an arbitration agreement that bears his electronic signature, is insufficient.

Equally unconvincing is Plaintiff's assertion that "Eneric cannot enforce the arbitration agreement as a non-signatory." ECF No. 12, PageID.202. According to Plaintiff, CIR's reference to "current or future parent organizations, subsidiaries, affiliates, successors, or assigns" does not include Eneric because the language is too broad. ECF No. 12, PageID.203. Defendant's position is that based on both Plaintiff's executed offer letter and the Arbitration Agreement, disputes with Eneric are clearly subject to mediation and arbitration as well.[2] The Court agrees.

"[T]he law favors arbitration agreements. Notwithstanding this, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *GGNSC Louisville St. Matthews*

---

[2] *See e.g.*, ECF No. 9, PageID.88 ("The Executed Offer Letter goes on to advise Heavey that: CIR and CIRA align their employment policies and procedures fully with those of their parent company, CIG, and all four entities are collectively referred to as 'Cambridge' in this letter."); *see also id.* at 88-89 ("[T]he Arbitration Agreement makes clear that CIR includes all of its 'current or future parent organizations, subsidiaries, affiliates, successors, or assigns,' which collectively constitute 'Cambridge.'").

*LLC v. Badgett*, 728 F. App'x 436 (6th Cir. 2018) (cleaned up).  In *Masco Corp. v.*

*Zurich Am. Ins. Co.*, the Sixth Circuit reasoned that,

> Masco argues that, because the parties did not contemplate UM/UIM coverage, they could not possibly have contracted to submit disputes arising out of this coverage to arbitration. But, by its plain terms, the arbitration clause embraces any dispute arising out of the deductible agreement whether or not the parties anticipated the dispute at the time of contracting. Our task, of course, is limited to enforcing the parties' agreement as written, and we have no license to write a "foreseeability" limitation into the arbitration agreement.

382 F.3d 624, 627 (6th Cir. 2004).  Heavey makes precisely the same request to this

Court—a post-execution limitation introduced in a last-ditch to avoid enforcement

of valid arbitration agreement.  The Court declines.  Plaintiff signed an offer letter

which provided notice that Eneric is one of "four entities [which] are collectively

referred to as 'Cambridge' in [the] letter."  ECF No. 9-2, PageID.105-106.  Then, he

contracted to an Arbitration Agreement governing disputes between "[Heavey] and

Cambridge (which includes "its current or future parent organizations, subsidiaries,

affiliates, successors, or assigns").  ECF No. 9-3, PageID.108.

Given this, (1) Eneric *is* a CIG subsidiary, as clearly stated in the Agreement;

(2) the language in the Agreement is not too broad; and (3) Heavey knew—or should

have known—that the Agreement requires arbitration of disputes with Eneric.  As a

result, all of Plaintiff's claims are presently improperly before the Court, and he must

follow the agreed steps outlined in the Agreement instead.  Rather than dismiss the

9

action at this time, the court will stay the proceedings until the parties have completed mediation and/or arbitration.[3] *See Smith*, 601 U.S. at 473.

**B.    Whether the Court Should Award Defendant Costs and Fees**

In the same Motion, Defendant lastly asks that the Court award it costs and fees because "Heavey and his counsel have unreasonably and vexatiously multiplied these proceedings by ignoring the Arbitration Agreement and attempting to (futilely) plead around it." ECF No. 9, PageID.99. Citing to 28 U.S.C. § 1927, Eneric argues that, because Plaintiff previously filed a substantially similar case against Cambridge in this District in which Defendant raised the same Arbitration Agreement, Plaintiff's filing of the existing action is improper. ECF No. 9, PageID.99-100. Plaintiff opposes the sanctions, maintains that his claims are not frivolous and instead reflect a "good-faith factual dispute." ECF No. 12, PageID.206. Here, the Court agrees with Plaintiff.

Although the claims in this action may be based on the same facts as Heavey's prior filings, Defendant has not sufficiently shown Heavey's bad faith. This is particularly true because, in this action, Plaintiff is suing a different entity, albeit a subsidiary and/or affiliate of Cambridge. *See generally* ECF No. 1; *see also Heavey v. Cambridge Investment Research Inc.*, No. 2:25-cv-12247-SKD-EAS (E.D. Mich.

---

[3] Having now ruled that there is a valid and enforceable arbitration agreement—which includes a mandatory mediation clause—between the parties, the Courts finds that Plaintiff must comply with the procedures set forth in the Agreement.

2025).   There is nothing in the record to reflect that this litigation was filed vexatiously or without a proper basis for relief.  The only disputed issue presented is whether this case should be in this Court or subject to arbitration.  That is not enough to assert any improper motive in filing and therefore, Defendant's request for costs and fees is denied.

**IV.**

Accordingly, Defendant's Motion to Dismiss or in the Alternative Compel Arbitration, and for Costs and Fees (ECF No. 9) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS HEREBY ORDERED** that the parties are **COMPELLED** to mediate/arbitrate the claims in dispute, and this action is **STAYED** pending resolution of the mediation/arbitration.

**IT IS FURTHER ORDERED** that Defendant's request for costs and fees is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 29, 2026                              /s/ Brandy R. McMillion
     Detroit, Michigan                         Hon. Brandy R. McMillion
                                            United States District Judge